UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
:
MARIA CAROLINA THOMPSON; and KIMBERLY :
CAPUANO, individually and on behalf of others similarly :
situated, : 18-cv-1001-ARR-GRB
:
Plaintiffs, :
: OPINION & ORDER
-against- :
:
BODY SCULPT INTERNATIONAL, LLC (d/b/a : NOT FOR ELECTRONIC
SONO BELLO); TRINET HR CORP.; TRINET HR III, : OR PRINT PUBLICATION
INC.; AESTHETIC PHYSICIANS, P.C. (d/b/a SONO :
BELLO); MICHAEL J. GARRISON; and JOHN/JANE :
DOES #1-18, :
:
Defendants. :
:
---------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiffs Maria Thompson and Kimberly Capuano bring this putative collective action against defendants. Plaintiffs allege that defendants violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., by failing to pay them overtime. Defendants have moved to dismiss the complaint on the basis that plaintiffs agreed to submit any such claims to arbitration. In the alternative, defendants request that I stay the proceedings in this court and compel plaintiffs to attend arbitration. At the same time, plaintiffs have moved for conditional certification of their proposed FLSA collective action. For the reasons discussed below, defendants' motion to stay the case and compel arbitration is granted and plaintiffs' motion for conditional certification is denied.

## BACKGROUND

**A. Factual Background**

Sono Bello—the trade name used by defendants Body Sculpt International, LLC and Aesthetic Physicians, P.C.—is a cosmetic surgery provider. Mem. in Supp. of Defs.' Mot. to Dismiss Compl.

1

or, in the Alternative, to Compel Arbitration and Stay Proceedings 6-7, ECF No. 27 ("Defs.' Mot."). Aesthetic Physicians employs Sono Bello's doctors, while Body Sculpt employs their administrative workers, including their patient care consultants.[1] Id. at 7. The patient care consultants recommend procedures to potential patients, schedule appointments, and act as liaisons between patients and medical staff. Compl. ¶ 46 & Ex. B. Both Thompson and Capuano were patient care consultants at Body Sculpt—Thompson from July 2015 to November 2017 and Capuano from December 2014 to July 2017. Id.

TriNet HR III, Inc. (called TriNet HR Corporation until January 2017) is a licensed professional employer organization. Id. ¶ 7; Defs.' Mot. 7. It performs human resources management tasks for its clients, including processing payroll for its clients' employees and providing those employees with personnel information and documents. Compl. ¶ 13. Body Sculpt was a TriNet client through Fall 2017. Defs.' Mot. 7.

Over the course of their employment with Body Sculpt, plaintiffs entered into multiple agreements relating to arbitration. These agreements are described below in chronological order.

  1. *The Hand-Signed Agreement*

Both plaintiffs hand-signed a contract titled "Arbitration Agreement" at the beginning of their employment with Body Sculpt. Capuono signed in December 2014 and Thompson in July 2015. Decl. of Michael Garrison ("Garrison Decl."), Exs. 1-2, ECF No. 27-1 ("Hand-Signed Agreement"). The agreement stated that arbitration would be the "exclusive means" for the parties to settle claims arising out of the employee's employment, including FLSA claims. Id. It provided that the agreement could "only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify this Agreement." Id. There was no reference to class arbitration in the agreement. Id. It stated that unless the employee and company agreed otherwise, arbitration would

---

[1] Michael Garrison is the president and principal of Body Sculpt. Compl. ¶ 9, ECF No. 1.

occur at the American Arbitration Association ("AAA") offices closest to the company's headquarters. Id. Further, it provided that the arbitrator would apply California law "in rendering his or her decision" and would "have the discretion to award monetary and other damages, or to award no damages." Id. Finally, it set a one-year statute of limitations for all claims brought against the company in arbitration. Id.

    *2. The TriNet Agreement*

Both plaintiffs later e-signed a contract titled "TriNet Terms and Conditions Agreement." Decl. of Grant Folsom ("Folsom Decl."), Ex. 4, ECF No. 27-2 ("TriNet Agreement").[2] This contract contained a "Dispute Resolution Protocol" that set out when and how claims should be arbitrated. TriNet Agreement § 9. The Protocol covered "any dispute arising out of or relating to your employment with TriNet and/or, if you work for one of TriNet's customers, arising out of or relating to your employment with your company." Id. § 9(a). It did not refer to any specific sources of claims, such as the FLSA. The agreement stated that the employee waived her right to arbitrate on a class or collective action basis and gave the employee an opportunity to opt-out of this waiver by checking a box. Id. § 9(d).

Plaintiffs reviewed the TriNet Agreement through an online human resources portal. Folsom Decl. ¶ 4. They accessed the agreement by logging into the portal with unique credentials. Id. ¶¶ 7-9. The agreement was presented on plaintiffs' initial log-in, at which point plaintiffs were prompted to enter their email addresses and then click either "I Accept" or "Reject." Id. ¶¶ 10-12. Thompson signed the first version in July 2015 and the second in January 2016. Id. ¶ 15. Capuano signed the first version in December 2014 and the second version in December 2015. Id. ¶ 16.

---

[2] There were two versions of this agreement: One is titled "TriNet HR Corporation Terms and Conditions Agreement" and is dated January 1, 2013. Folsom Decl., Ex. 3. The other is titled the "TriNet Terms and Conditions Agreement" and is dated December 19, 2015. Id., Ex. 4. Where I quote specific terms, I quote from the later version.

3

### 3. The Body Sculpt Agreement

Thompson e-signed a contract titled "Agreement Regarding Dispute Resolution Through Arbitration" in November 2017. Decl. of Bradley John Schaufenbuel ("Schaufenbuel Decl."), Ex. 1, ECF No. 27-4 ("Body Sculpt Agreement"). Capuano did not sign this agreement, as she had already left the company. As with the TriNet Agreement, Thompson reviewed the Body Sculpt Agreement through an online human resources portal. Schaufenbuel Decl. ¶¶ 3, 8. She accessed the agreement by logging into the portal with her unique credentials at some point on or after November 9, 2017, when the document became available. Id. ¶ 8. On November 17, Thompson checked a box that said "I acknowledge this document" and signed her name electronically. Id. ¶ 10.

The agreement states that Body Sculpt and the employee agree that they will resolve all "legally cognizable disputes"—including FLSA claims—through "single-party, bilateral arbitration." Body Sculpt Agreement. It expressly precludes class and collective arbitration. Id. § 11. It also expressly "revokes and supersedes any prior or contemporaneous oral or written understanding on" arbitration, including—by name—the TriNet Agreement and the Hand-Signed Agreement. Id. § 17. Finally, it states that Arizona law "shall apply to questions regarding the interpretation" of the agreement. Id. § 5.

## B. Procedural Background

In February 2018, plaintiffs filed a collective action complaint against defendants, on behalf of themselves and other patient care consultants. They alleged that defendants improperly characterized them as exempt employees under the FLSA and had failed to pay them overtime. Compl. ¶¶ 67-70; 29 U.S.C. § 207.

In May, plaintiffs moved to conditionally certify their collective action under 29 U.S.C. § 216. Mot. to Certify FLSA Collective Action, ECF No. 25. Defendants moved to dismiss the case on the grounds that the parties had agreed to arbitrate any FLSA claims. Defs.' Mot. 1. In the alternative,

defendants requested that I stay the case and compel the parties to submit their claims to arbitration proceedings. Id. Both of these motions are now before me.

## DISCUSSION

The Federal Arbitration Act ("FAA") makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 336 (2011). The FAA reflects a "liberal federal policy favoring arbitration," Concepcion, 563 U.S. at 339 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)), instituted "in response to widespread judicial hostility to arbitration agreements," id. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25. If "the making of the agreement . . . is not in issue," 9 U.S.C. § 4, and there is no "ground for revocation," I must enforce it. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

State-law contract principles govern the validity and enforceability of arbitration agreements. See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016); Ragone v. Atl. Video, 595 F.3d 115, 121 (2d Cir. 2010). Arbitration agreements, like other contracts, may include a choice-of-law provision. When a contract does not include such a provision, New York's choice-of-law rules apply. Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013) ("[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits."). Under New York's choice-of-law rules, New York substantive law applies when there is no "actual conflict of laws on the issues presented." Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011).[3] Here, because I have found no actual conflict of substantive law, I apply

---

[3] When there is such a conflict in a contract case, New York courts apply the "center of gravity" approach. Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 642 N.E.2d 1065, 1068 (N.Y. 1994). Under this approach, the law of the state with "the most significant relationship to the transaction and the parties" will apply. Id. (quoting Restatement (Second) of Conflict of Laws § 188(1)). To determine which state has such a relationship,

5

New York law to questions of contract validity and enforcement. And although the Hand-Signed Agreement and the Body Sculpt Agreement provide that other states' laws apply in certain circumstances, I conclude that neither forum-selection clause indicates that the parties intended those states' laws to apply to questions of contract validity and enforceability. The Hand-Signed Agreement states only that the arbitrator shall apply California law "in rendering his or her decision." Hand-Signed Agreement 2. And the Body Sculpt Agreement states that Arizona law "shall apply to questions regarding the interpretation" of the agreement." Body Sculpt Agreement § 5. Neither provision suggests that I should apply California or Arizona law to questions regarding contract validity and enforcement.[4] I therefore apply New York law.

In deciding a motion to compel arbitration, I apply a "standard similar to that applicable for a motion for summary judgment." Nicosia, 834 F.3d at 229 (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). "In doing so, [I] must draw all reasonable inferences in favor of the non-moving party." Id. If, viewing the facts in the light most favorable to the non-moving party, the arbitration agreement is valid and enforceable as a matter of law, then I must grant the motion to compel arbitration. See id. (citing Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011)); see also Bensadoun, 316 F.3d at 175. Defendants argue that the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Reply in Supp. of Defs.' Mot. to Dismiss Compl. or, in the Alternative, to Compel

---

the court "may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Brink's Ltd. v. S. African Airways, 93 F.3d 1022, 1031 (2d Cir. 1996). Here, the majority of plaintiffs' work took place in New York. Compl. ¶¶ 3-4. In addition, Thompson is a resident of New York. Id. ¶ 3. While the remaining parties reside in other states—Capuano in New Jersey, Sono Bello in Arizona, and TriNet in California, id. ¶¶ 4, 6, 7—I conclude that the place where plaintiffs performed the work that is the subject of this dispute is the center of gravity in this case. New York law therefore applies to questions of validity and enforcement even if there is a conflict between potentially applicable state laws.

[4] See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003) (distinguishing "gateway matters, such as whether the parties have a valid agreement at all," from questions of "contract interpretation").

Arbitration and Stay Proceedings 21, ECF No. 33 ("Defs.' Reply") (quoting Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000)).  Green Tree, however, relates to when a party may resist arbitration on the ground that Congress intended to forbid parties from waiving their right to a judicial remedy.  531 U.S. at 91-92 (Truth in Lending Act) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (Age Discrimination in Employment Act), and Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987) (Securities Exchange Act)).  It does not change the fact that I must draw all reasonable inferences in favor of plaintiffs in deciding this motion.

## I. Plaintiffs Must Arbitrate Their FLSA Claims.

Because the TriNet Agreement is valid and enforceable, Capuano must arbitrate any and all of her FLSA claims in bilateral arbitration with defendants.  And because the Body Sculpt Agreement is valid and enforceable, Thompson must also arbitrate any and all of her FLSA claims in bilateral arbitration with defendants.

### A. Plaintiffs Assented to the Arbitration Agreements.

Capuano entered into both the Hand-Signed Agreement and the TriNet Agreement, and Thompson entered into the Hand-Signed Agreement, the TriNet Agreement, and the Body Sculpt Agreement.  Plaintiffs argue that defendants have not shown that they entered into the TriNet Agreement or the Body Sculpt Agreement.  Pls.' Opp'n to Defs.' Mot. to Dismiss 9-10, ECF No. 30 ("Pls.' Opp'n").  But each in fact admits that she assented to both contracts.  Pls.' Opp'n, Ex. A, Decl. of Maria Carolina Thompson ¶¶ 1-2, 12, ECF No. 30-1 ("Thompson Decl."); Pls.' Opp'n, Ex. B, Decl. of Kimberly Capuano ¶¶ 1-2, 12, ECF No. 30-2 ("Capuano Decl.").  Specifically, they swear that they were "forced to sign" the agreements in order to keep their jobs.  Thompson Decl. ¶¶ 1-2; Capuano Decl. ¶¶ 1-2.  But whether they were pressured into assenting to the agreements goes to whether the contracts were procedurally unconscionable, see Section I.C—not whether they entered into the contract in the first place.  See Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 569

7

(S.D.N.Y. 2013). Even viewing the facts in the light most favorable to plaintiffs, therefore, they assented to the agreements at issue.

### B. The Body Sculpt and TriNet Agreements Revoked Any Earlier Agreements.

Plaintiffs argue that the Hand-Signed Agreement is the only agreement at issue, because it contains a clause that provides that it "can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify this Agreement." Hand-Signed Agreement 2; see Pls.' Opp'n 10-11. I conclude, however, that the Hand-Signed Agreement was revoked by the TriNet Agreement, which in turn was revoked by the Body Sculpt Agreement.

#### 1. *The Body Sculpt Agreement Revoked the TriNet Agreement.*

Plaintiffs admit that the Body Sculpt Agreement expressly revokes the Hand-Signed Agreement. Pls.' Opp'n 10-11. Indeed, that agreement states that it "revokes and supersedes any prior or contemporaneous oral or written understanding on the subjects addressed herein, including, as applicable, the 'TriNet Terms and Conditions Agreement' and its 'Dispute Resolution Protocol,' and/or the 'Arbitration Agreement' previously entered [into] by the parties." Body Sculpt Agreement § 17. Assuming the Body Sculpt Agreement is enforceable—which it is, see Section I.C—it clearly satisfies the Hand-Signed Agreement's requirement of express revocation. Thompson's claims are therefore governed by the Body Sculpt Agreement.

#### 2. *The TriNet Agreement Revoked the Hand-Signed Agreement*

The Hand-Signed Agreement's clause requiring express revocation does not render the TriNet Agreement unenforceable. Plaintiffs argue that the TriNet Agreement is unenforceable because the TriNet Agreement does not state its intention to revoke the Hand-Signed Agreement by name. Pls.'

8

Opp'n 10. Plaintiffs' argument, however, fails because the TriNet Agreement did satisfy the requirement of express revocation and therefore did revoke the Hand-Signed Agreement.[5]

The TriNet Agreement states that it is the "full and complete agreement for resolution of covered disputes . . . between you and your company." TriNet Agreement § 9(f). Covered disputes include "any dispute . . . arising out of or relating to your employment with your company." Id. § 9(a). In other words, the TriNet Agreement expressly states that it is the full and complete agreement for all employment-related claims. I find that this satisfies the Hand-Signed Agreement's requirement that it be expressly revoked in writing. It is true that the TriNet Agreement does not mention the Hand-Signed Agreement by name. Nonetheless, the TriNet Agreement expressly revokes *all* other previous agreements related to the "resolution of covered disputes" between the plaintiffs and their employer. Id. § 9(f). This necessarily includes the Hand-Signed Agreement. Indeed, the only other arbitration agreement plaintiffs had signed at the time of the TriNet Agreement was the Hand-Signed Agreement. The Hand-Signed Agreement's express revocation clause therefore does not render unenforceable the subsequent TriNet Agreement.

Even assuming, however, the TriNet Agreement had to mention the Hand-Signed Agreement by name to revoke it, Capuano would still be required be required to pursue her claims through arbitration. This is because the Hand-Signed Agreement is not unconscionable and therefore mandates arbitration even if the TriNet Agreement does not.

**C. None of the Agreements Are Unconscionable.**

Plaintiffs argue that the Hand-Signed Agreement is unenforceable because it is unconscionable. I conclude, however, that neither the Hand-Signed Agreement nor the other two

---

[5] Plaintiffs also argue that the Hand-Signed Agreement is unenforceable on the grounds that it is unconscionable. Plaintiffs provide no reason why all but the express revocation clause would be unenforceable, nor would such an outcome make sense.

agreements are unconscionable. The Body Sculpt Agreement therefore governs Thompson's claims and the TriNet Agreement governs Capuano's claims.

### 1. *Neither the Body Sculpt Agreement Nor the TriNet Agreement Is Unconscionable.*

Plaintiffs do not argue that either the Body Sculpt Agreement or the TriNet Agreement is unconscionable. To the extent that any of plaintiffs' arguments on the unconscionability of the Hand-Signed Agreement could also be applied to the other agreements, I reject them for the reasons discussed below. Significantly, none of plaintiffs' arguments as to substantive unconscionability would apply to the Body Sculpt or TriNet Agreements, which substantially modified or removed the provisions with which plaintiffs took issue in the Hand-Signed Agreement.

### 2. *The Hand-Signed Agreement Is Not Unconscionable.*

Plaintiffs argue that the Hand-Signed Agreement is both procedurally and substantively unconscionable. I disagree.

"Under New York law, a contract is unconscionable when it is 'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" Ragone, 595 F.3d at 121-22 (quoting Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)). The party seeking to avoid the contract must show that it is both procedurally and substantively unconscionable. Id. In other words, she must show that both the circumstances of the contract's creation and the terms of the contract are grossly unreasonable. Id.

The Hand-Signed Agreement is not procedurally unconscionable. In making this determination, I must examine "the contract formation process and the alleged lack of meaningful choice." Gillman v. Chase Manhattan Bank, 534 N.E.2d 824, 828 (N.Y. 1988). "The focus is on . . . the size and commercial setting of the transaction . . . , whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming

unconscionability, and whether there was disparity in bargaining power." Id. Offering an arbitration agreement on a "take it or leave it" basis is not sufficient to render it procedurally unconscionable. Ragone, 595 F.3d at 122; accord Victorio v. Sammy's Fishbox Realty Co., LLC, No. 14-cv-8678 (CM), 2015 WL 2152703, at *13 (S.D.N.Y. May 6, 2015). Nor is the fact that the party claiming unconscionability lacks a college degree or a business background. Ragone, 595 F.3d at 122. As the Second Circuit noted in Ragone, "New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to [her]." Id.

Plaintiffs argue that the Hand-Signed Agreement is procedurally unconscionable for a number of reasons. The parties' bargaining power was unequal, plaintiffs contend, because plaintiffs were less sophisticated (having only completed a high school education and worked in sales for most of their careers) and because plaintiffs' "only choice was to accept [the agreement] or not work." Pls.' Opp'n 12-13. In addition, defendants presented the agreement along with other papers, and put plaintiffs "under constant pressure to sign [it] as soon as possible," id. at 13, "before the close of the same business day." Capuano Decl. ¶ 2; Thompson Decl. ¶ 2. Moreover, plaintiffs allege, defendants did not tell them that they could negotiate the terms or consult an attorney. Capuano Decl. ¶ 3; Thompson Decl. ¶ 3; Pls.' Opp'n 13. Nor did defendants tell them that the Hand-Signed Agreement applied a shorter statute of limitations than the FLSA, or where they could access the AAA arbitration rules. Pls.' Opp'n 13.

These allegations, however, are not enough to establish procedural unconscionability. It is true that the bargaining power between plaintiffs and defendants was not equal. But equality is not required, provided the circumstances of the contract's creation are not grossly unreasonable. Taking the facts in the light most favorable to plaintiffs, they spoke and read fluent English, had well over a decade of experience in the working world, and were given at least until the end of a business day to

review the agreement. And the fact most likely to indicate a lack of meaningful choice—that the contract was a condition of their continued employment—has been ruled insufficient to render an agreement's formation grossly unreasonable. See Ragone, 595 F.3d at 122. I cannot conclude, therefore, that the Hand-Signed Agreement is procedurally unconscionable.

Nor is the Hand-Signed Agreement substantively unconscionable (subject to the caveats described below). An agreement is substantively unconscionable when "one or more key terms are unreasonably favorable to one party." Sablosky v. Gordon Co., 535 N.E.2d 643, 647 (N.Y. 1989). "When both an employer and its employees are bound to an agreement to arbitrate, when the terms of the agreement are equally applicable to both parties, and when the employer bears any unreasonable cost of the arbitration, the arbitration agreement is not unreasonably favorable to the employer." Isaacs, 968 F. Supp. 2d at 569.

Plaintiffs argue that four provisions render the Hand-Signed Agreement substantively unconscionable. Specifically, plaintiffs take issue with the fact that the agreement: (1) requires the arbitrator to apply California law with no express carve-out for federal causes of action, (2) gives the arbitrator discretion in awarding relief, (3) states that the arbitration shall take place in the AAA office closest to the defendants' headquarters, and (4) shortens the statute of limitations for FLSA claims to one year. Pls.' Opp'n 13-15. I agree that at least some of these provisions are likely unenforceable—particularly the statute of limitations provision. See Castellanos v. Raymours Furniture Co., 291 F. Supp. 3d 294, 300-01 (E.D.N.Y. 2018). Regardless, defendants are willing to waive all four of these provisions should the Hand-Signed Agreement control. Defs.' Reply 13-14. The remainder of the arbitration agreement survives, consistent with both the contract's severability clause and Second Circuit precedent. Hand-Signed Agreement 2 ("If any provision of this Agreement is adjudged to be void or otherwise unenforceable in whole or in part, such adjudication shall not affect the validity of the remainder of this agreement."); see also Ragone, 595 F.3d at 124-25 ("[T]he 'appropriate remedy'

when a court is faced with a plainly unconscionable provision of an arbitration agreement . . . 'is to sever the improper provision of the arbitration agreement, rather than void the entire agreement.'" (quoting Brady v. Williams Capital Grp., L.P., 878 N.Y.S.2d 693, 701 (App. Div. 2009))).

**D. The Parties Must Engage in Bilateral, Not Class-Wide, Arbitration.**

Plaintiffs must arbitrate their claims against defendants individually, not as part of a class. "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010); accord Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1623 (2018). Even a contract's silence as to class arbitration is not enough to indicate that the parties have agreed to it, as "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." AnimalFeeds, 559 U.S. at 685. Individual arbitration is the default. To speak of "waiving" the right to class arbitration is therefore misleading.

Here, plaintiffs argue only that the Hand-Signed Agreement did not waive their right to class-wide arbitration. Pls.' Opp'n 11. Plaintiffs observe, correctly, that the FAA "does not require parties to arbitrate when they have not agreed to do so." Id. (quoting Nicosia, 834 F.3d at 229). But the corollary of this principle is that parties must also agree to arbitrate as a class—not that parties must expressly give up that ability. See AnimalFeeds, 559 U.S. at 684. Plaintiffs do not argue that any of the contracts indicate the parties' agreement to engage in class arbitration. Indeed, the Hand-Signed Agreement is silent as to class arbitration and the TriNet Agreement contains a "Class Action Waiver" that states that "[t]here will be no right or authority for any dispute to be . . . arbitrated as a class, [or] collective . . . action." TriNet Agreement § 9(d).[6] The Body Sculpt Agreement is even more explicit.

---

[6] The TriNet Agreement allowed employees to check a box if they wished to "opt out of the Class Action Waiver." Id. Even assuming that checking this box would provide a sufficient basis to conclude that both

It states that "[t]he Parties . . . expressly agree that any dispute or claim will be resolved by way of arbitration in which only Employee and Company are the parties to the arbitration." Body Sculpt Agreement § 11. Further, it states that nothing in that agreement "shall be interpreted to authorize an arbitration initiated pursuant to this Agreement to proceed as a class action, collective action, or representative action." Id. I conclude, therefore, that plaintiffs must engage in individual arbitration, regardless of which agreement controls.

### E. Each Agreement Applies to All of Plaintiffs' Potential Claims, Regardless of When The Claims Arose.

Neither the TriNet Agreement nor the Body Sculpt Agreement are limited to claims that arose after they were signed. When an arbitration agreement does not contain an express temporal limitation, it applies to any covered claims—even those that arose before the parties executed the agreement. Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2d Cir. 1999); Reid v. Supershuttle Int'l, Inc., No. 08-cv-4854 (JG) (VVP), 2010 WL 1049613, at *5 (E.D.N.Y. March 22, 2010) ("The Second Circuit has held that arbitration clauses without an express limitation to 'future[] disputes' should be applied to any preexisting claims." (quoting Coenen v. R.W. Pressprich & Co., 453 F.2d 1209, 1212 (2d Cir. 1972))). Here, neither agreement contains a temporal limitation. Indeed, the Body Sculpt Agreement states that it "shall apply to any and all legally cognizable disputes of any nature between [the parties], regardless of when the dispute arose . . . and shall include any dispute that occurred before . . . the Parties' execution [of] this Agreement." Body Sculpt Agreement § 2. Because the agreements do not limit arbitration to future disputes, the TriNet Agreement applies to all of Capuano's claims and the Body Sculpt Agreement applies to all of Thompson's claims.

---

parties agreed to engage in class arbitration, plaintiffs make no argument that they did check the box. They simply state, in conclusory fashion, that they were "not told and . . . did not agree to waive [their] right to class or collective actions or arbitration." Thompson Decl. ¶ 12; Capuano Decl. ¶ 12.

**F. Any of the Defendants May Enforce the Arbitration Agreements.**

All defendants have the power to compel arbitration under both the TriNet Agreement and the Body Sculpt Agreement. Plaintiffs do not argue otherwise. See Pls.' Opp'n 15-16. Nor could they, as plaintiffs agreed to arbitrate their claims with all of defendants in both the TriNet and Body Sculpt Agreements. TriNet Agreement § 9(a) ("This [Dispute Resolution Protocol] covers any dispute arising out of or relating to your employment with TriNet and/or, if you work for one of TriNet's customers, arising out of or relating to your employment with your company."); Body Sculpt Agreement § 1 (stating that the agreement was between and binding upon the employer and the "Company," which it defined to include "Body Sculpt International, LLC, and its . . . affiliates, and related entities or corporations, and any of their past and present officers, directors, shareholders, employers, employees, agents, partners, attorneys, insurers, heirs, successors, and assigns.").

Moreover, even if the Hand-Signed Agreement controlled, plaintiffs' contention that that agreement can only be enforced by Sono Bello is unpersuasive. As defendants point out, a non-signatory may enforce an arbitration agreement on an equitable estoppel theory when "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 70 (2d Cir. 2005) (quoting JLM Indus. v. Stolt-Nielsen S.A., 387 F.3d 163, 177 (2d Cir. 2004); see also Ragone, 595 F.3d at 126-27 (holding that plaintiff was estopped from avoiding arbitration with ESPN, which—while not mentioned in the arbitration agreement—was considered by plaintiff to be her co-employer); Diaz v. Mich. Logistics Inc., 167 F. Supp. 3d 375, 382 (E.D.N.Y. 2016). Here, plaintiffs allege that all of the defendants were their joint employers under the FLSA and as such are all liable for the purported overtime violations. Compl. ¶¶ 11-36. In light of that position, plaintiffs are estopped from arguing that only some of the defendants can enforce the Hand-Signed Agreement.

## II. The Case Is Stayed Rather Than Dismissed.

Defendants have moved to dismiss the complaint but, in the alternative, request that I stay the case and compel the parties to arbitration. I conclude that I must stay the case. As the Second Circuit has observed, "[t]he FAA's text, structure, and underlying policy" require me to stay the case rather than dismiss it. Katz v. Cellco P'ship, 794 F.3d 341, 345-47 (2d Cir. 2015). Although dismissing the matter might assist in "efficient docket management," the FAA "clearly removes such discretion." Id. at 346. I therefore stay the case while the parties proceed to arbitration.

## III. Plaintiffs' Motion for Conditional Certification of a Collective Action Is Moot.

I deny plaintiffs' motion to conditionally certify a collective action, because I have concluded that they must arbitrate their claims. Although plaintiffs have urged me to rule on their conditional certification motion before ruling on defendants' arbitration motion, Pls.' Opp'n 7-8, doing so would be inefficient. As this court has observed, "[p]ermitting Plaintiffs to seek certification of a collective action at this time would be putting the cart before the horse: Plaintiffs may only move for certification on behalf of similarly situated parties if they have standing to bring this lawsuit . . . , [which] hinges on the outcome of the motion to compel arbitration." Hamoudeh v. Unitedhealth Grp. Inc., Case No. 16-cv-790 (PKC) (RML), 2016 WL 2894870, at *1 (E.D.N.Y. May 17, 2016). Because I am granting defendants' motion to compel arbitration, plaintiffs' motion for conditional certification is moot.

## CONCLUSION

For the reasons discussed above, the case is stayed and the parties are ordered to arbitration. Plaintiffs' motion to conditionally certify a FLSA collective action is denied as moot.

So ordered.

Dated: July 2, 2018  
       Brooklyn, NY

                s/ Allyne R. Ross  
                Allyne R. Ross  
                United States District Judge